**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| Teresa Marie Anaya,  )  <br>  )  <br>             Plaintiff,  )  <br>  )  <br>vs.  )  <br>  )  <br>First Federal Bank of Kansas City,  )  <br>  )  <br>Serve President & CEO J.R. Buckner at:  )  <br>6900 N. Executive Drive  )  <br>Kansas City, MO 64120  )  <br>  )  <br>             Defendant.  ) | Case No. 2:21-cv-02188 |

**COMPLAINT FOR DAMAGES**

COMES NOW Plaintiff Teresa Marie Anaya, by and through her attorneys at The Law Offices of Tracy L. Robinson, LC, who, pursuant to 15 U.S.C. § 1681, *et seq.*, in her Complaint for Damages states and alleges to the Court as follows:

**INTRODUCTION**

This is an action for damages brought by individual consumer Teresa Marie Anaya against First Federal Bank of Kansas City for violations of the Fair Credit Reporting Act (hereafter "FCRA"), 15 U.S.C. §§1681, *et seq*, as amended.

**JURISDICTION AND VENUE**

1.     Jurisdiction over this proceeding arises from 15 U.S.C. § 1681 and generally under 28 U.S.C. § 1331.

2.     Venue in this Court is proper in that Defendant transacts business in the state of Kansas and Kansas is where the injuries occurred.

## PARTIES AND SERVICE

3. Teresa Marie Anaya, (hereafter "**Plaintiff**"), is a natural person who, at all times relevant, resides in the State of Kansas.

4. Defendant First Federal Bank of Kansas City, (hereafter "**Defendant**"), is a financial institution that regularly services clients in Kansas, and may be served through its President & CEO J.R. Buckner, at 6900 N. Executive Dr., Kansas City, MO 64120.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5. On September 4, 2015, Plaintiff filed a Chapter 13 Bankruptcy in the District of Kansas, Case No. 15-21938-dls.

6. The Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines was entered on September 8, 2015 showing Defendant's predecessor Inter-State Federal Savings and Loan was sent notice of Plaintiff's bankruptcy.

7. The BNC Certificate of Mailing of the Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines is attached as Exhibit A.

8. Plaintiff had a mortgage with Inter-State Federal Savings and Loan on her residence with payments to be made directly to Inter-State Federal Savings and Loan.

9. The pertinent pages of Plaintiff's Chapter 13 Plan are attached as Exhibit B.

10. On November 20, 2020, the Chapter 13 Trustee filed a Notice of Final Cure, to which Defendant filed a Response in Agreement on December 14, 2020.

11. Notice of Final Cure and Response in Agreement are attached as Exhibit C.

12. On January 20, 2021, Inter-State Federal Savings and Loan filed a Notice of Transfer of Claim transferring the servicing of Plaintiff's loan to Defendant.

13. Notice of Transfer of Claim in attached as Exhibit D.

14. In 2016, Inter-State Federal Savings and Loan and Defendant merged banks operating under Defendant's name.

15. Plaintiff received her discharge on January 17, 2021.

16. The BNC Certificate of Mailing of the Notice of Discharge of Debtor After Completion of Chapter 13 Plan showing Defendant received notice of Plaintiff's discharge is attached as Exhibit E.

17. On February 9, 2021, Plaintiff requested and reviewed her credit reports from Equifax, Experian, and TransUnion.

18. Plaintiff became aware that Defendant was misreporting her mortgage under both bank names to Equifax, Experian, and TransUnion.

19. Defendant was incorrectly reporting both mortgage accounts were discharged through Plaintiff's Chapter 13.

20. The pertinent pages of Plaintiff's incorrect credit reports are attached as Exhibit F.

21. On February 22, 2021, Plaintiff sent letters with her bankruptcy information to Equifax, Experian, and TransUnion disputing Defendant's incorrect reporting in accordance with 15 U.S.C. § 1681i.

22. Copies of Plaintiff's dispute letters are attached as Exhibit G.

23. Copies of the Certified Mail Receipts are attached as Exhibit H.

24. Equifax, Experian, and TransUnion sent Automated Consumer Dispute Verifications (hereafter "ACDV's") to Defendant as required by 15 U.S.C. §1681i, and Defendant responded and verified the incorrect reporting.

25. The pertinent pages of Plaintiff's reinvestigation results are attached as Exhibit I.

26. Defendant's failure to conduct a reasonable investigation of Plaintiff's accounts was a substantial factor causing Plaintiff reduced credit scores, emotional distress, frustration, missed time from work in order to tend to this matter, missed personal time in order to tend to this matter, vehicle operating costs for miles driving in order to tend to this matter, inconvenience and the hindrance to her fresh start entitled under the Bankruptcy Code.

27. The inaccurate information negatively reflects upon Plaintiff, Plaintiff's credit repayment history, Plaintiff's financial responsibility as a debtor and Plaintiff's credit worthiness.

## COUNT I
## FIRST FEDERAL BANK OF KANSAS CITY
## VIOLATIONS OF THE FCRA

28. Plaintiff repeats, realleges and incorporates by reference each and every prior paragraph in this Complaint.

29. Plaintiff is a "consumer" within the meaning of the Fair Credit Reporting Act (hereafter "**FCRA**"), 15 U.S.C. 1681, *et seq*.

30. Defendant qualifies as a "furnisher of information to credit reporting agencies" within the meaning of the FCRA.

31. The FCRA prohibits furnishers of information to credit reporting agencies (hereafter "**CRAs**") to furnish information which is inaccurate, irrelevant, and improper, or which such furnishers have reason to believe is inaccurate.

32. Delinquencies, account balances, and other repayment information on a loan is consumer report information to CRAs within the purview of the FCRA.

33. The FCRA also provides privately enforceable duties where consumers may dispute the accuracy and completeness of information by initiating a reinvestigation through the CRAs. 15 U.S.C. § 1681i.

34. After receipt of a disputed account from a CRA, a furnisher has a duty to reinvestigate and review the information provided and conduct its own investigation of the accuracy and completeness of the disputed information.

35. The courts have consistently adopted the standard that the furnisher's reinvestigation must be evaluated under a reasonable investigation standard, which should be evaluated from a number of factors.

36. The furnisher must consider the information communicated in or with the notice of dispute from the CRA. 15 U.S.C. § 1681i(a)(1)(A).

37. In addition, the furnisher must also consider other information available to it, including earlier complaints or other communications received from the consumer before the reinvestigation ever began. *Bruce v. First U.S.A. Bank*, 103 F.Supp.2d 1135 (E.D. Mo. 2000).

38. It is important to keep in mind that the duties of furnishers of information imposed under § 1681s-2(b) are only triggered after the furnisher receives notice of a consumer's dispute from a CRA. Regardless of which CRA notified a furnisher of information of a consumer dispute, a furnisher may have duties related to the other CRAs, such as reporting that information was found to be incomplete or inaccurate or modifying, deleting, or blocking the reporting of the information. *Tilley v. Global Payments, Inc.*, 603 F.Supp.2d 1314 (D. Kan., 2009).

39. Any furnisher who fails to comply with the investigation requirements is liable to the consumer for statutory damages, the costs of litigation, and attorney fees. 15 U.S.C. § 1681o.

40. If the violation is willful, the furnisher is liable for actual damages or minimum statutory damages between $100 and $1000 per violation, for punitive damages, as well as for costs and attorney fees. 15 U.S.C. § 1681n.

41. The standard for willful violation of the FCRA is reckless disregard, and that reckless disregard need not be knowing, intentional, premeditated, or malicious. *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47 (2007).

42. After receiving notice of Plaintiff's dispute letters from Equifax, Experian, and TransUnion, Defendant should have investigated and properly updated the information reported on Plaintiff's accounts but failed to do so.

43. As a result of the actions of Defendant, Plaintiff suffered damages including reduced credit scores, emotional distress and frustration.

44. The plain language of the FCRA's damages provisions permits Plaintiff to recover "any actual damages sustained by the consumer as a result of the failure." 15 U.S.C. § 1681n(a)(1)(A).

45. Further, minimum statutory damages between $100 and $1000 per violation, punitive damages, as well as the costs of the litigation and attorney fees are available when a furnisher willfully violates its duties under the FCRA. *Rodgers v. McCullough*, 296 F. Supp.2d 895 (W.D. Tenn. 2003).

46. Defendant was notified by Equifax, Experian, and TransUnion of Plaintiff's disputes requesting an investigation that it was reporting inaccurate information on Plaintiff's credit reports.

47. Defendant elected to ignore that information it received, failed to do a reasonable investigation and refused to fully correct and update Plaintiff's credit report.

48. The purpose of the investigation is not simply to confirm that the credit reporting agency has recorded accurately the information initially furnished by the creditor, but also to determine in good faith the accuracy of the information itself in light of available information.

49.     Defendant knew it was required by law to have investigation procedures and protocols in place to conduct an investigation of Plaintiff's account information and Defendant's failure and refusal to have proper procedures in place to conduct a reasonable investigation of Plaintiff's accounts constitutes willful, conscious and reckless disregard for Plaintiff's rights, including those under the FCRA.

50.     Defendant's failure and refusal to conduct a reasonable investigation and correct the information Defendant is furnishing to the credit reporting agencies concerning Plaintiff's accounts constitutes a willful violation of the FCRA.

51.     This failure and refusal are compounded by Defendant's failure and refusal to have the proper policies and procedures in place to investigate and correct mistakes reporting to the credit reporting agencies and is willful, intentional and in conscious disregard of the rights of Plaintiff and others justifying the imposition of punitive damages.

WHEREFORE, Plaintiff prays judgment in her favor for damages as provided by the FCRA in such amount as fair and reasonable, for her actual damages incurred, for the imposition of punitive damages against Defendant in such sum as will deter First Federal Bank of Kansas City and others in the future from similar conduct, and for such other relief the Court deems just and reasonable.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Teresa Marie Anaya respectfully requests this Court award the following:

a.     Actual Damages,

b.     Statutory Damages for each violation of the FCRA;

c.     Punitive Damages;

      d.      Costs and reasonable attorney's fees pursuant to the FCRA;

      e.      Correction of all misreported information on Plaintiff's Equifax, Experian, and TransUnion credit reports; and

      f.      For such other and further relief as may be just and proper.

Respectfully submitted,

/s/ Chelsea S. Herring
Chelsea S. Herring #20522
The Law Offices of Tracy L. Robinson, LC
600 E. 8th St., Suite A
Kansas City, MO  64106
Phone:  (816) 778-7328 Direct Line
Fax:     (816) 842-0315
chelseah@tlrlaw.com
Attorney for Plaintiff